2 CV 2043
MEM SUP

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY WILLIAMS, JR.,            :
                                :
            Plaintiff,          :        CIVIL ACTION NO.
                                :        3:02-CV2043 (MRK)
v.                              :
                                :
COMCAST CABLEVISION             :
OF NEW HAVEN, INC.,             :
                                :
            Defendant.          :        DECEMBER 10, 2003

DEFENDANT COMCAST CABLEVISION OF
NEW HAVEN, INC.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

In response to the termination of his employment, Plaintiff Johnny Williams

("Williams") has sued his former employer, Defendant Comcast Cablevision of New

Haven, Inc. ("Comcast"), alleging seven causes of action: (1) breach of an express

contract, (2) breach of an implied contract, (3) retaliation for his "union activism", (4)

negligent misrepresentation, (5) negligent infliction of emotional distress, (6) intentional

infliction of emotional distress, and (7) breach of an implied covenant of good faith and fair

dealing. (Complaint, attached hereto at <u>Tab A</u>). It is undisputed that the terms and

conditions of Plaintiff's employment with Comcast were governed by a collective bargaining

agreement. Accordingly, § 301 of the Labor Management Relations Act ("LMRA")

preempts all of Plaintiff's state law claims that require interpretation of the collective

bargaining agreement. Furthermore, because Plaintiff did not grieve his claims under the

collective bargaining agreement, his present contract claims fail as a matter of law. With

respect to Plaintiff's claim that he was retaliated against because of his union activity, and

his related emotional distress claims, such claims are within the exclusive jurisdiction of the

National Labor Relations Board, and not this Court. Even if this Court were to hold that

Plaintiff's claims for negligent and intentional emotional distress are not preempted, they

fail as a matter of law under Connecticut law. Furthermore, Plaintiff's claims are time-

barred. Therefore, for multiple independent reasons, all of Plaintiff's claims should be

dismissed and summary judgment should be entered in Comcast's favor.

## SUMMARY OF UNDISPUTED FACTS[1]

A.    Termination of Williams' Employment.

Williams was employed by Comcast, and Comcast's predecessor, from 1990 until July 21, 2000. (Williams Depo, pp. 13-15[2]; Termination Letter, attached hereto at Tab C). During his entire employment, Williams was a member of a union, The Connecticut Union of Telephone Workers, Inc. ("CUTW" or the "Union").[3] (Williams Depo, pp. 14-15, 53). Not only was Williams a member of the Union, but he held several leadership positions, including Second Steward, Main Steward, Vice President, and President. (Williams Depo, pp. 53-59).

In July 3, 2000, Williams underwent surgery for a vasectomy and was expected to return to work on July 17, 2000. (Williams Depo, pp. 74-76; Plaintiff's Response to Interrogatory No. 5, attached hereto at Tab D). From July 12 through July 16, Williams

---

[1]    Certain of the facts set forth below may be subject to countervailing evidence if there were to be a trial on this matter. For purposes of this Motion, however, Comcast takes the facts in the light most favorable to the Plaintiff. Fed. R. Civ. P. 56.

[2]    Plaintiff's Deposition transcript is attached hereto at Tab B.

[3]    In or about 2000, the CUTW merged with another union, the CWA. This merger, however, did not affect the collective bargaining agreement that governed Plaintiff's employment. (Williams Depo, pp. 15, 52-53).

was approved for short-term disability benefits. (Complaint, ¶30). Williams did not return to work on that day; after three days of Williams being absent, Comcast terminated Williams' employment. (Termination Letter).

Williams asserts that the only reason he was discharged was because of his union activity. (Williams Depo, pp. 100-101, 110-111). Upon receiving the Termination Letter, Williams went to the Union's office and spoke with Joseph Albright, the Union Executive Vice President. (Williams Depo, p. 64). With Williams present, Albright placed a call to Comcast. (Williams Depo, pp. 64-67). Williams, however, did not participate in that conversation. (Williams Depo, pp. 65-66). Indeed, Williams did not have any direct contact with Comcast after receiving the Termination Letter. (Williams Depo, p. 100).

As a member of the Union, the terms and conditions of Williams employment were governed by a collective bargaining agreement (hereinafter, "Union Contract") entered into between CUTW and Comcast. (Williams Depo, pp. 105; Union Contract, attached hereto at Tab E). Among other things, the Union Contract contained a "Grievance Procedure." (Union Contract, Art. 5). Under the Grievance Procedure, a "grievance" is defined as "a conflict, dispute, or question between the Union and the Company, or between an Employee and the Company, as to the interpretation, application or performance of the terms of this [Union Contract]." (Union Contract, Art. 5(a)). Under the Union Contract an employee could allow the Union to handle his grievance or the employee himself could present the

grievance to the company for adjustment.  (Union Contract, Art. 5(b) and (d)).  The Union

Contract further provides:

> [a]ny grievance arising out of or relating to the interpretation of [the Union Contract] that cannot be resolved through the grievance procedure as provided in Article 5 may be submitted to arbitration upon request of either party.

(Union Contract, Art. 6(a)).

As a member of the Union, and in his leadership positions, Williams often

participated in the grievance process under the Union Contract.  (Williams Depo, pp. 57,

69; Sample Grievances of Williams, attached hereto at Tab F).  Although he was familiar

with the Grievance Procedure, neither Williams nor the Union filed a grievance with

Comcast regarding his discharge and his short-term disability benefits.  (Williams Depo,

pp. 33-34).  Rather, Williams merely had the Union call Comcast on July 22 to discuss his

discharge.  (Williams Depo, pp. 33, 64-68).  At his deposition, Williams explained that he

did not follow the grievance procedure because he did not want his job back and he thought

he could get a "greater gain" by having his own attorney sue in court.  (Williams Depo, pp.

67-68).

Due to his involvement in the Union, Williams was also familiar with the National

Labor Relations Board (hereinafter, the "Board").  (Williams Depo, p. 60).  Neither

Williams nor the Union filed a charge with the Board challenging Williams' discharge. (Williams Depo, p. 34).

Over two years after being discharged, on or about November 5, 2002, Williams filed this action.  (Complaint).

## ARGUMENT

As the Second Circuit Court of Appeals has recognized, "[g]iven the ease with which [law]suits may be brought and the energy and expense required to defend such actions," the use of summary judgment is an integral part of the litigation process. <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir.), <u>cert. denied</u>, 474 U.S. 829 (1985); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  Summary judgment helps to avoid protracted, expensive and harassing trials. <u>Balut v. Loral Elecs. Sys.</u>, 988 F. Supp. 339, 343 (S.D.N.Y. 1997).

Indeed, "[s]ummary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Reeves v. Johnson Controls World Servs., Inc.</u>, 140 F.3d 144, 149 (2d Cir 1998) (<u>citing</u> <u>Celotex Corp.</u>, 477 U.S. at 322).  The non-moving party must "offer 'concrete evidence from which a reasonable juror

could return a verdict in his favor' . . . and is not entitled to a trial simply because the determinative issue focuses upon the [moving party's] state of mind." Balut, 988 F. Supp. at 343. The party opposing the motion cannot simply rely upon unsupported assertions or conclusory statements. Id.; Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

Summary judgment is properly granted in this case because, even accepting Williams' allegations and deposition testimony as true for purposes of this Motion, Williams' claims are either preempted or legally insufficient. Williams is unable to articulate specific facts which create genuine issues of material fact and Comcast is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Accordingly, based upon the allegations of the Complaint, Williams' own deposition testimony, and certain indisputable facts, summary judgment should enter in favor of Comcast on each of the counts of Plaintiff's Complaint.

## I.    PLAINTIFF'S CLAIMS ARE PREEMPTED

Plaintiff's causes of action are based upon two assertions: (1) Plaintiff's employment was terminated because of his union activity, and (2) Plaintiff was improperly denied certain benefits provided under the Union Contract (e.g., just cause, notice of termination, short-term disability benefits). As discussed herein, Plaintiff's claims are

either preempted by the National Labor Relations Act because they are within the exclusive

jurisdiction of the National Labor Relations Board, or by § 301 of the Labor Management

Relations Act because they require interpretation of the Union Contract.

A.    The National Labor Relations Act Preempts Plaintiff's Claims That He Was
      Retaliated Against Because of His Union Activity.

Pursuant to the National Labor Relations Act ("NLRA"), the National Labor

Relations Board (hereinafter, the "Board") has exclusive jurisdiction over unfair labor

practices committed by employers and labor organizations.  29 U.S.C. §§ 157, 158 and

160.  Accordingly, the NLRA preempts state law and state causes of action relating to

conduct that is actually or arguably prohibited by or protected by the NLRA.  Citing San

Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959); Local 926,

International Union of Operating Engineers, AFL-CIO v. Jones, 460 U.S 669, 676 (1983).

The Supreme Court has long held:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States
> as well as the federal courts must defer to the exclusive competence of
> the National Labor Relations Board . . . .

Garmon, 359 U.S. at 244.  Therefore:

> [A]s a general rule, neither state nor federal courts have jurisdiction
> over suits directly involving 'activity (which) is arguably subject to § 7
> or § 8 of the Act.'

Vaca v. Sipes, 386 U.S. 171, 179 (1967).

> Under the NLRA, employees have the right to:
>
> Self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activity for the purpose of collective bargaining or other mutual aid or protection . .

29 U.S.C. § 157.  In order to protect those rights, the NLRA further provides:

> It shall be an unfair labor practice for an employer-
>
> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7] of the title; . . .
>
> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . .

29 U.S.C. § 158 (a).

The Supreme Court has specifically held that claims of discriminatory discharge that relate to an individual's union activity are within the exclusive jurisdiction of the Board. Local 926, 460 U.S at 676.  In Local 926, the plaintiff believed that the Union business agent unlawfully urged the company to discharge him.  460 U.S. at 672.  The plaintiff brought suit in state court and alleged in part a common-law claim that the Union had unlawfully interfered with his employment contract with the Company.  Id. at 675.  In determining whether the plaintiff's claims were preempted, the Supreme Court held that the dispositive question is: Whether the conduct that . . . [is] the basis of liability is actually or

arguably protected or prohibited by the NLRA. Id. at 686. Because the plaintiff's allegation against the Union fell within the ambit of §7 or §8 of the Act, the Court held that the plaintiff's claim was preempted. Id. at 675.

In this case, Williams expressly claims that he was discriminated against because of his alleged union activism. (Complaint, Counts 1-7, ¶¶ 38-39; Count 3, ¶ 43; Williams Depo, pp. 100-101, 110-111). Furthermore, Plaintiff's claim for emotional distress (Counts Five and Six) are based upon Comcast's decision to terminate his employment and not on any other conduct. (Complaint, Counts 5 and 6; Williams Depo, pp.106-107). If true, such a claim constitutes an unfair labor practice under § 8(a) of the NLRA. Accordingly, the Board, and not this Court, has jurisdiction to hear Williams' claim. Therefore, Counts One through Seven are preempted and summary judgment should be entered in favor of Comcast.

B.    Section 301 Of The Labor Management Relations Act Preempts Certain Claims.

Regardless of Comcast's alleged motivation, Williams also claims that he did not receive various benefits provided under the Union Contract, i.e., the "just cause" provision, advanced notice of discharge and short-term disability (Complaint, Counts 1, 2, 4 and 7, ¶¶

21-30, 38, 42). However, those claims are preempted by §301 of the Labor Management

Relations Act.

Section 301 of the Labor Management Relations Act preempts any state law claims

based upon rights created by a collective bargaining agreement. Caterpillar, Inc. v.

Williams, 482 U.S. 386, 394-395 (1987). Section 301 provides:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce
> as defined in this Act, or between any such labor organizations, may be
> brought in any district court of the United States having jurisdiction of
> the parties, without respect to the amount in controversy or without
> regard to the citizenship of the parties.

29 U.S.C. § 185(a). For a court "[t]o determine whether defendant violated the [collective

bargaining agreement], the court must necessarily interpret the [collective bargaining

agreement]." Fonseca v. RBC Heim Bearings Corp., 87 F. Supp. 2d 137, 138 (D. Conn.

2000) (claim alleging that employer breached a collective bargaining agreement preempted

by §301 of the LMRA). Accordingly, the Supreme Court has held that "if the resolution of

a state-law claim depends upon the meaning of a collective bargaining agreement, the

application of state law . . . is preempted." Lingle v. Norge Div. of Magic Chef, 486 U.S.

399, 406 (1988); see also, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)

(holding that LMRA § 301 preempts state claims that are "substantially dependent upon analysis of the terms of" a collective bargaining agreement).

Courts in this circuit have consistently applied the preemption doctrine of § 301 to state law claims for breach of a collective bargaining agreement. <u>Monumental Blunders, Inc. v. CBS Corp.</u>, 2000 U.S. Dist. LEXIS 8323 (S.D.N.Y. Jun. 15, 2000) (<u>Tab G</u>) (breach of contract claim preempted where a union contract created the right to severance pay allegedly owed); <u>Wilhelm v. Sunrise Northeast, Inc.</u>, 923 F. Supp. 330, 335-36 (D. Conn. 1995) (breach of collective bargaining agreement claim preempted by § 301); <u>Gregory v. Southern New England Tel. Co.</u>, 896 F. Supp. 78, 83-84 (D. Conn. 1994) (same); <u>Ziobro v. Connecticut Inst. for Blind</u>, 818 F. Supp. 497, 501-02 (D. Conn. 1993) (same); <u>Anderson v. Coca-Cola Bottling Co.</u>, 772 F. Supp. 77, 81 (D. Conn. 1991) (implied contract claim preempted because it required the Court to interpret a collective bargaining agreement).

In this case, Section 301 preempts Williams' state law claims for various benefits provided under the Union Contract, which will require this Court to interpret the Union Contract. Specifically, Williams claims that: (1) Comcast did not have "just cause" to terminate his employment, (2) he was not given two-weeks advance notice of his discharge and (3) he was not provided with his short-term disability benefits. (Complaint, Counts 1, 2, 4 and 7). Each of these claims is preempted because to assess their merits would require

this Court to interpret the Union Contract. Therefore, Plaintiff's claims of breach of an

express contract (Count 1), breach of an implied contract (Count 2), negligent

misrepresentation (Count 4), and breach of an implied covenant of good faith and fair

dealing (Count 7) are all preempted by § 301, and summary judgment should enter in favor

of Comcast.

II.    WILLIAMS DID NOT FILE A GRIEVANCE AND THEREFORE DID NOT
       EXHAUST HIS ADMINISTRATIVE REMEDIES

       While this Court has jurisdiction to hear a valid § 301 claim, Plaintiff has not

presented one in his Complaint. Plaintiff failed to exhaust the Union Contract's grievance

and arbitration procedures, which are necessary prerequisites for a claim under § 301.

       It is well settled that an aggrieved employee cannot seek judicial relief against his

employer for breach of a collective bargaining agreement if he has not exhausted the

grievance-arbitration machinery provided in the agreement as the employee's exclusive

remedy:

> As a general rule, in cases to which federal law applies, federal labor
> policy requires that individual employees wishing to assert contract
> grievances must attempt use of the contract grievance procedure agreed
> upon by employer and union as the mode of redress.

Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1965). This requisite furthers the federal policy preferring contract grievance procedures to settle labor disputes. 29 U.S.C. § 173(d); 29 U.S.C. § 171(c); Republic Steel Corp., 379 U.S. at 653. Where an employee fails to exhaust the grievance procedures of a collective bargaining agreement before suing in court, the lawsuit must be dismissed. See Allis-Chalmers, 471 U.S. at 220 ("A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563 (1976); Dougherty v. American Tel. & Tel. Co., 902 F.2d 201, 203 (2d Cir. 1990) ("Although plaintiffs formulate their complaint as based on state tort law, that formulation is not binding on us where rights and obligations under the pertinent collective bargaining agreement are inextricably involved in the underlying claim"); Wheeler v. Graco, 985 F.2d 108, 112 (3rd Cir. 1993) (preempted state law claim could not be asserted as a § 301 claim because Plaintiff did not exhaust the grievance and arbitration procedures available in his CBA). See also, Shortt v. New Milford Police Dept., 212 Conn. 294, 310 (1989); Tooley v. Metro-North Commuter R.R. Co., 58 Conn. App. 485, 495-96 (2000) (employee failed to exhaust his remedies under the collective bargaining agreement).

As with most collective bargaining agreements, the Union Contract between Comcast and Plaintiff's Union provides for a grievance procedure that culminates with arbitration. Here, the Union Contract provides an extensive grievance procedure. (Union Contract, Art. 5). Under § Article 5 of the Union Contract, either Williams or the Union could have filed a grievance regarding Plaintiff's claims. If Williams or the Union was not satisfied with Comcast's response, the dispute could have been submitted to the American Arbitration Association. (Union Contract, Art. 6).

As a long-time member of the Union, a Union Steward, and the Union President, Plaintiff was familiar with the grievance process. (Williams Depo, pp. 57, 59). Despite his knowledge of the grievance procedure, Plaintiff did not request his Union to file a grievance regarding his claims, and he himself did not present a grievance to Comcast. (Williams Depo, pp. 33-34, 67-68).

Plaintiff attempts to excuse his failure to grieve his disputes by claiming that he submitted an "oral" grievance. (Williams Depo, pp. 64-66). The Union Contract, however, does not provide for such "oral" grievances and requires that unresolved matters be submitted to arbitration. (Union Contract, Art. 5 and 6).

As discussed above, a detailed grievance procedure was made available to Williams. Because Williams failed to utilize that procedure, this Court cannot now entertain his claims for breach of contract, express and implied, misrepresentation or breach of the implied

covenant of good faith and fair dealing. Therefore, summary judgment should be entered in favor of Comcast on Counts One, Two, Three, Four and Seven.

III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

Furthermore, Plaintiff's claims are now time-barred. The applicable 6-month statute of limitations bars Plaintiff's claims.

1.    Any Claim of Discrimination Because of Union Activity Is Time-Barred.

The NLRA provides a six-month statute of limitation for an individual to file a charge claiming an unfair labor practice:

> [N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board. . .

29 U.S.C. § 160(b).

In this case, neither the Union nor Plaintiff has ever filed a charge with the NLRB regarding any of Plaintiff's claims. (Williams Depo, p. 34). Therefore, Plaintiff's claims that would have been within the jurisdiction of the Board are now time-barred.

2.    <u>Any claim under § 301 is time-barred</u>.

Claims under § 301 must also be brought within six months.  The Supreme Court

adopted the statute of limitations found in the National Labor Relations Act for claims under

§ 301.  <u>Del Costello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151 (1983).  <u>See also</u> <u>United</u>

<u>Auto., Aerospace, & Agric. Implement Workers v. R.E. Dietz Co.</u>, 996 F.2d 592, 596 (2d

Cir. 1993) (<u>citing</u>) <u>McKee v. Transco Prods.</u>, 874 F.2d 83, 87 (2d Cir. 1989); <u>Monumental</u>

<u>Blunders</u>, 2000 U.S. Dist. LEXIS at *11 (<u>Tab G</u>) (preempted state law claim time-barred by

6-month statute of limitations).  "This six month period begins to run, when the claimant

discovers, or in the exercise of reasonable diligence should have discovered, the acts

constituting the breach of duty."  <u>Wilhelm v. Sunrise Northeast</u>, 923 F. Supp. 330, 337 (D.

Conn. 1995) (internal quotations and citations omitted) (preempted state law claims time-

barred); <u>Carrion v. Enterprise Ass'n</u>, 227 F.3d 29, 34 (2d Cir. 2000).  Accordingly, the six

month statute of limitations began to run July 21, 2000, when Williams was informed that

his employment with Comcast was terminated.  (Termination Letter).  Williams' Complaint,

however, was not filed until on or about November 5, 2002, nearly two years too late.

Therefore, any claim Williams may have asserted under § 301 is now time-barred.

IV.   SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFF'S CLAIM
      OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In Count Five, Williams claims that Comcast negligently inflicted emotional distress

against him.  Given that the only conduct Plaintiff's alleges as a foundation for his

emotional distress claim is his discharge, Plaintiff's emotional distress claim is also

preempted by the Supreme Court's decision in Garmon.  See § I supra.  Moreover, even if

Plaintiff's claim is not preempted, it fails as a matter of law.

Generally, in order to establish a cause of action for negligent infliction of emotional

distress in Connecticut, Williams must prove

> that . . . [Comcast] should have realized that [their] conduct involved an
> unreasonable risk of causing emotional distress and that that distress, if
> it were caused, might result in illness or bodily harm.

Montinieri v. Southern New England Tel. Co., 175 Conn. 337, 345 (1978); see also

Morris v. Hartford Courant Co., 200 Conn. 676, 683 (1986) (employer's negligent

investigation of plaintiff's alleged criminal activities, and its incorrect allegation that he was

a thief, did not satisfy this standard).

However, the Connecticut Supreme Court has recently limited claims of negligent

infliction of emotional distress in the employment context.  In Perodeau v. Hartford, 259

Conn. 729 (2002), the Connecticut Supreme Court limited such claims in employment

matters to conduct within the context of termination of employment, as distinguished from

actions or omissions occurring within the context of a continuing employment relationship. Furthermore, the Supreme Court has held:

> [t]he mere termination of employment, even where it is wrongful, is . . . not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.

Citing Parsons v. United Techs. Corp., 243 Conn. 66, 88-89 (1997), Perodeau, 259 Conn. at 750. As one District Court has observed, "[t]he issue in a claim for negligent infliction of emotional distress is the Defendant's conduct, not his intent." Whitaker v. Haynes Constr. Co. Inc., 167 F. Supp. 2d 251, 256 (D. Conn. 2001). Even before the Supreme Court issued its decision in Perodeau, several District Courts anticipated this limitation of negligent infliction of emotional distress claims in an employment context. Whitaker, 167 F. Supp. 2d 251; Mordhurst v. Skinner Value Div. of Parker Hannifin Corp., No. 3:99 CV 00561, 2001 U.S. Dist. LEXIS 14397 (D. Conn. July 24, 2001) (attached hereto at Tab H); Evoy v. City of Hartford, No. 3:97 CV 2400, 2001 U.S. Dist. LEXIS 14340, *4-5 (D. Conn. June 25, 2001) (attached hereto at Tab I); Riley v. ITT Fed. Serv. Corp., No. 3:99 CV 02362, 2001 U.S. Dist. LEXIS 3326 *17-19 (D. Conn. Feb. 22, 2001) (attached hereto at Tab J); Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341 (D. Conn. 2001).

In this case, unless "[Comcast's] conduct during the termination process was sufficiently wrongful that [Comcast] should have realized that its conduct involved an

unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm," Williams' cause of action for negligent infliction of emotional distress fails as a matter of law. Perodeau, 259 Conn. at 751. Other than alleging that the termination of his employment was discriminatorily motivated, Williams has not alleged that Comcast engaged in any wrongful conduct as part of the termination process. Williams has failed to present any evidence to establish that his termination was carried out in an unreasonable, humiliating, or embarrassing manner. Pavliscak v. Bridgeport Hosp., 48 Conn. App. 580, 598 (1998). Therefore, as a matter of law, Williams' claim for negligent infliction of emotional distress fails and Comcast is entitled to summary judgment on Count Five.

V.    SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count Six, Williams claims that Comcast intentionally inflicted emotional distress upon him. Given that the only conduct Plaintiff's alleges as a foundation for his emotional distress claim is his discharge, which he claims is discriminatory, Plaintiff's emotional distress claim is also preempted by the Supreme Court's ruling in Garmon. Moreover, even if Plaintiff's claim is not preempted, it fails as a matter of law.

It is well established in Connecticut that a cause of action for intentional infliction of emotional distress may be maintained only if four elements are satisfied:

> (1) [Defendant] intended to inflict emotional distress; or that [it] knew or should have known that emotional distress was a likely result of [its] conduct; (2) that the conduct was extreme and outrageous; (3) that the [defendant's] conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

(citing Petyan v. Ellis, 200 Conn. 243, 253 (1984)); Appleton v. Board of Educ., 254 Conn. 205, 210 (2000).

In this case, Williams has not produced any evidence from which a reasonable jury could find that (1) Comcast engaged in "extreme" and "outrageous" behavior or (2) Comcast knew or should have known that its conduct would result in severe emotional distress. Therefore, for either reason, summary judgment should be entered on Count Six in favor of Comcast.

### 1.    Comcast's conduct was not extreme or outrageous.

Whether Comcast's conduct is sufficient to satisfy the element of extreme and outrageous conduct, in the first instance, is a question for this Court. Appleton, 254 Conn. at 210. As the Supreme Court has recognized, the threshold for actionable conduct is high:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in the civilized community. Generally, the case is one in which the recitation of the facts to an average

member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous".

(Internal citations and quotation marks omitted.)  Appleton, 254 Conn. at 210-11.  In Appleton, the Supreme Court applied this high standard and affirmed the trial court's decision to enter summary judgment.  In that case, the plaintiff, a long-term tenured teacher, alleged that one of the defendants made condescending comments to her regarding her vision and ability to read in front of her colleagues, telephoned her daughter and stated that she had been acting differently, and called the police to have her escorted out of the building. Appleton, 254 Conn. at 211.  The plaintiff also alleged that one of the defendants subjected her to two psychiatric examinations and that she was ultimately forced to resign.  Id. Nevertheless, although the defendants' conduct may have been distressful and hurtful, the Supreme Court held that, as a matter of law, the conduct was not extreme and outrageous, and affirmed the trial court's granting of summary judgment.  Id. at 211-12.

Similarly, the District Courts in this District have strictly applied the standard of "extreme" and "outrageous."  See, e.g., Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986) (holding conduct not extreme and outrageous where company policy denied leave of absence to an employee undergoing chemotherapy treatments for cancer); Lopez-Salerno v. Hartford Fire Ins., No. 3:97 CV 273 (AHN), 1997 U.S. Dist. LEXIS 19724, at *19 (D. Conn. Dec. 8, 1997) (dismissed plaintiff's claim that she was terminated

so defendant could avoid long-term disability benefits) (attached hereto at <u>Tab K</u>);

<u>Thompson v. Service Merch., Inc.</u>, No. 3:96 CV 1602 (GLG), 1998 U.S. Dist. LEXIS 13669, at *2-3 (D. Conn. 1998) (granting motion for summary judgment, finding that plaintiff's allegations that employer degraded her race, removed her responsibilities in order to undermine her authority, and failed to provide adequate supervision and sufficient staff to do her job, did not constitute extreme and outrageous conduct) (attached hereto at <u>Tab L</u>).

In this case, Comcast did not, as a matter of law, engage in any "extreme" and "outrageous" conduct.  Therefore, summary judgment should be entered in its favor on the Sixth Count.

      2.    <u>Comcast did not intend to inflict emotional distress upon Plaintiff</u>.

Secondly, there is no evidence that Comcast intended, or acted recklessly, to inflict emotional distress upon Williams.

For these independent reasons, Count Six fails as a matter of law, and summary judgment should be entered.

### CONCLUSION

For the foregoing reasons, Comcast respectfully requests that this Court grant summary judgment in its favor on all counts of the Complaint.

-23-

DEFENDANT –  COMCAST CABLEVISION OF
NEW HAVEN, INC.


By _____
Michael C. Harrington - ct17140
mharrington@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  (860) 240-6000
Fax:  (860) 240-6150
Its Attorneys