UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHNNY WILLIAMS, JR., | : |
|     Plaintiff, | : |
| | : CIVIL ACTION NO. |
| | : 3:02-CV2043 (MRK) |
| v. | : |
| | : |
| COMCAST CABLEVISION | : |
| OF NEW HAVEN, INC., | : |
| | : |
|     Defendant. | : DECEMBER 10, 2003 |

LOCAL RULE 9(c)(1)
STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 9(c), under the Federal Rules of Civil Procedures 56, Defendant Comcast Cablevision of New Haven, Inc. submits this statement of material facts as to which there is no genuine dispute to be tried.[1]

1.  Williams was employed by Comcast, and Comcast's predecessor, from 1990 until July 21, 2000. (Williams Depo, pp. 13-15[2]; Termination Letter, attached hereto at Tab B).

---

[1] Certain other facts set forth below may be subject to countervailing evidence if there was to be a trial on this matter. For purposes of this Motion, however, Waterbury Companies takes the facts in the light most favorable to Plaintiff. See F. R. Civ. P 56.

[2] Plaintiff's Deposition transcript is attached hereto at Tab A.

2.  During his entire employment, Williams was a member of a union, The Connecticut Union of Telephone Workers, Inc. ("CUTW" or the "Union").[3] (Williams Depo, pp. 14-15, 53).

3.  Not only was Williams a member of the Union, but he held several leadership positions, including Second Steward, Main Steward, Vice President, and President. (Williams Depo, pp. 53-59).

4.  In July 3, 2000, Williams underwent surgery for a vasectomy and was expected to return to work on July 17, 2000. (Williams Depo, pp. 74-76; Plaintiff's Response to Interrogatory No. 5, attached hereto at <u>Tab C</u>).

5.  From July 12 through July 16, Williams was approved for short-term disability benefits. (Complaint, ¶ 30; Complaint attached hereto at <u>Tab D</u>).

6.  Williams did not return to work on that day; after three days of Williams being absent, Comcast terminated Williams' employment. (Termination Letter).

7.  Williams asserts that the only reason he was discharged was because of his union activity. (Williams Depo, pp. 100-101; 110-111).

8.  Upon receiving the Termination Letter, Williams went to the Union's office and spoke with Joseph Albright, the Union Executive Vice President. (Williams Depo, p. 64).

---

[3] In or about 2000, the CUTW merged with another union, the CWA. This merger, however, did not affect the collective bargaining agreement that governed Plaintiff's employment. (Williams Depo, pp. 15, 52-53).

9. With Williams present, Albright placed a call to Comcast. (Williams Depo, pp. 64-67).

10. Williams, however, did not participate in that conversation. (Williams Depo, pp. 65-66).

11. Williams did not have any direct contact with Comcast after receiving the Termination Letter. (Williams Depo, p. 100).

12. As a member of the Union, the terms and conditions of Williams employment were governed by a collective bargaining agreement (hereinafter, "Union Contract") entered into between CUTW and Comcast. (Williams Depo, pp. 105; Union Contract, attached hereto at Tab E).

13. Among other things, the Union Contract contained a "Grievance Procedure." (Union Contract, Art. 5).

14. Under the Grievance Procedure, a "grievance" is defined as "a conflict, dispute, or question between the Union and the Company, or between an Employee and the Company, as to the interpretation, application or performance of the terms of this [Union Contract]." (Union Contract, Art. 5(a)).

15. Under the Union Contract an employee could allow the Union to handle his grievance or the employee himself could present the grievance to the company for adjustment. (Union Contract, Art. 5(b) and (d)).

16. The Union Contract further provides:

[a]ny grievance arising out of or relating to the interpretation of [the Union Contract] that cannot be resolved through the grievance procedure as provided in Article 5 may be submitted to arbitration upon request of either party.

(Union Contract, Art. 6(a)).

17. As a member of the Union, and in his leadership positions, Williams often participated in the grievance process under the Union Contract. (Williams Depo, pp. 57, 69; Sample Grievances of Williams, attached hereto at Tab F).

18. Although he was familiar with the Grievance Procedure, neither Williams nor the Union filed a grievance with Comcast regarding the termination of Williams' employment or his claim for Short Term Disability benefits. (Williams Depo, pp. 33-34).

19. Williams merely had the Union call Comcast on July 22 to discuss his discharge. (Williams Depo, pp. 33, 64-68).

20. At his deposition, Williams explained that he did not follow the grievance procedure because he did not want his job back and he thought he could get a "greater gain" by having his own attorney sue in court. (Williams Depo, pp. 67-68).

21. Due to his involvement in the Union, Williams was also familiar with the National Labor Relations Board (hereinafter, the "Board"). (Williams Depo, p. 60).

22. Neither Williams nor the Union filed a charge with the Board challenging Williams' discharge. (Williams Depo, p. 34).

23. Over two years after being discharged, on or about November 5, 2002, Williams filed this action. (Complaint).

DEFENDANTS – COMCAST CABLEVISION OF NEW HAVEN, INC.

By /s/ Michael C. Harrington
Michael C. Harrington - ct17140
mharrington@murthalaw.com

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone: (860) 240-6000
Fax: (860) 240-6150
Its Attorneys