UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-----------------------------------------------------X

JOHNNY WILLIAMS, JR.,

          Plaintiff,

v.

COMCAST CABLEVISION
OF NEW HAVEN, INC.,

          Defendant.

-----------------------------------------------------X

Civil Action No.
3:02-CV-2043 (MRK)

DATE: MARCH 8, 2004

FILED
MAR 9  3 48 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

## LOCAL RULE 9(c) 2 STATEMENT

1.

Williams was employed by Comcast, and Comcast's predecessor, from 1990 until July 21, 2000. (Williams Depo, pp. 13-152; Termination Letter)

Admitted

2.

During his entire employment, Williams was a member of a union, The Connecticut Union of Telephone Workers, Inc. ("CUTW" or the "Union.").' (Williams Depo, pp. 14-15, 53).

Admitted

3.

Not only was Williams a member of the Union, but he held several leadersbip positions, including Second Steward, Main Steward, Vice President, and President.

(Williams Depo, pp. 53-59).

Admitted

4.

In July 3, 2000, Williams underwent surgery for a vasectomy and was expected to return to work on July 17, 2000. (Williams Depo, pp. 74- 76; Plaintiff's Response to Interrogatory N o . 5 )

Denied. Plaintiff's was released back to work by his tretaing physician on August 1, 2000.

5.

From July 12 through July 16, Williams was approved for short-term disability benefits. (Complaint, ¶ 30)

Denied. Plaintiff should have been approved through August 1, 2000.

6.

Williams' did not return to work on that day; after three days of Williams being absent, Comcast terminated Williams' employment. (Termination Letter).

Denied . Defendant terminated Plaintiff's employment on July 21, 2000, effective immediately, for reason of "job abandonment", without giving Plaintiff two week notice. (Complaint ¶ 38)

7.

Williams asserts that the only reason he was discharged was because of his union activity. (Williams Depo, pp. 100-101; 110-111).

Denied. Plaintiff was discharged for "job abandonment".

8.

Upon receiving die Termination Letter, Williams went to the Union's office and spoke with Joseph Albright, the Union Executive Vice President. (Williams Depo, p. 64).

Admitted

9.

With Williams present, Albright placed a call to Comcast. (Williams Depo, pp. 64-67)

Admitted

10.

Williams, however, did DOt participate in that conversation. (Williams Depo, pp. 65-66)

Denied. Plaintiff did participate, it was on his insistence that the phone call was made.

11.

Williams did not have any direct contact with Comcast after receiving the Termination Letter. (Williams Depo, p. 100).

Admitted

12.

As a member of the Union, the terms and and conditions of Williams employment were governed by a collective bargaining agreement (hereinafter, "Union Contract") entered into between CUTW and Comcast. (Williams Depo, pp. 105; Union Contract)

Denied. The terms and conditions of Plaintiff's employment were governed by the Employee Handbook or Manual and the Union Contract.

13.

Among other things, die Union Contract contained a "Grievance Procedure."

(Union Contract, Art. 5).

Admitted

14.

Under the Grievance procedure, a "grievance" is defined as "a conflict, dispute, or question between the Union and the Company, or between an Employee and the Company, as to the interpretation, application or performance of the terms of this [Union Contract]." (Union Contract, Art. 5(a)).

15.

Under the Union Contract an employee could allow the Union to handle his grievance or the employee himself could present the grievance to the company for adjustment. (Union Contract, Art. 5(b) and (d)).

Denied. The document speaks for itself, but it does not say that.

16.

The Union Contract further provides:

[a]ny grievance arising out of or relating to the interpretation of [the Union Contract] that cannot be resolved through the grievance procedure as provided in Article 5 may be submitted to arbitration upon request of either party .
(Union Contract, Art. 6(a)).

Admitted

17.

As a member of the Union, and in his leadership positions, Williams often participated in the grievance process under the Union Contract. (Williams Depo, pp. 57, 69; Sample Grievances of Williams)

Denied. Plaintiff did not say that.

18.

Although he was familiar with the Grievance Procedure, neither Williams nor the Union filed a grievance with Comcast regarding the termination of Williams' employment or his claim for Short Term Disability benefits. (Williams Depo, pp. 33-34)

Denied. Plaintiff did file a verbal grievance. The Short Term Disability benefits were governed by the Manual not the Union Contract.

19.

Williams merely had the Union call Comcast on July 22 to discuss his discharge. (Williams Depo, pp. 33, 64-68).

Denied. Plaintiff did file a verbal grievance(Williams Depo, pp. 33, 64-68)

20.

At his deposition, Williams explained that he did not follow the grievance procedure because he did not want his job back and he thought he could get a "greater gain" by having his own attorney sue in court. (Williams Depo, pp. 67-68)

Denied. Defendant is misrepresenting what Plaintiff said. He said he filed a verbal grievance, then went to union headquarters to speak with Joseph Albright. Albright phoned defendant. Then they discussed possible courses of action. At that time Comcast filed for decertification and it was not much the union could do to help Plaintiff, Albright let him know that the union could not help him.

21.

Due to his involvement in the Union, Williams was also familiar with the National Labor Relatios Board. (Williams Depo p. 60)

Denied. He was not familiar with it at all.

22.

Neither Williams nor the Union filed a charge with the Board challenging

Williams' discharge. (Williams Depo, p. 34).

Admitted

23.

Over two years after being discharged, on or about November 5, 2002, Williams filed this action. (Complaint).

Admitted

PLAINTIFF – JOHNNY WILLIAMS, JR.

By _____

Alexander Bardocz, ct16940
Fine, Olin & Anderman, LLP
Attorneys for Plaintiff
336 State St., 2nd Floor
North Haven, CT. 06437
Tel. (203) 287-8081
Fax (203) 287-5416
abardocz@foalaw.com