UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Jun 1  2 29 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

JOHNNY WILLIAMS, JR., :
: 
Plaintiff :
: NO. 3:02cv2043 (MRK)
v. :
:
COMCAST CABLEVISION :
OF NEW HAVEN, INC., :
:
Defendant :

## MEMORANDUM OF DECISION

Plaintiff originally brought this lawsuit against his former employer in state court, alleging several state law causes of action arising from the termination of his employment. The employer removed the action to federal court on the ground that all of the employee's claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") and §§ 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157-58 ("NLRA"). Currently pending before this Court are Plaintiff's Motion to Remand the case to state court [doc. # 32] and Defendant's Motion for Summary Judgment [doc. # 21]. Both motions require this Court to consider the complete preemption corollary to the well-pleaded complaint rule and the scope of preemption under the LMRA and NLRA. For the reasons set forth below, the Court DENIES Plaintiff's Motion to Remand [doc. # 32] and GRANTS Defendant's Motion for Summary Judgment [doc. # 21].

1

## I. Background

There is no genuine dispute regarding the facts that are material to the pending motions.[1] Plaintiff Johnny Williams, Jr. was employed by Defendant Comcast Cablevision of New Haven, Inc. ("Comcast") and its predecessor from 1990 until July 21, 2000. *See* Deposition of Johnny Williams [doc. #21], Ex. B at 13-15 ("Williams Depo."). During his employment, Mr. Williams was a member of the Connecticut Union of Telephone Workers (the "Union") and was very active in Union management and Union affairs, ultimately rising to the presidency of the Union. *Id.* at 53-59.

In July 2000, Mr. Williams had surgery and was eligible for short-term disability. Def.'s 9(c)1, ¶ 5. There is a dispute between the parties (which this Court need not resolve) about when Mr. Williams was expected to return to work from short-term disability and the duration for which he had been approved for short-term disability benefits. Pl.'s 9(c)2, ¶ 5. It is undisputed, however, that as of July 20, 2000 Mr. Williams had not yet returned to work. Def.'s 9(c)1, ¶ 6; Pl.'s 9(c)2, ¶ 6. On July 21, 2000, Comcast sent Mr. Williams a letter informing him that he had been approved for short-term disability from July 12-16 and that he had been expected back at work on July 18 (his first work day after July 16). *See* Letter re Notice of Employment Termination, [doc. #21], Ex. C. The letter went on to state that since Mr. Williams had not

---

[1] The facts are set forth in Defendant's Local Rule 9(c)1 Statement of Undisputed Facts [doc. # 23] ("Def.'s 9(c)1"), and the attached exhibits. In his Local Rule 9(c)2 Statement [doc. #34], Plaintiff admits most of the facts in Defendant's Statement. Plaintiff fails to controvert several of Defendant's factual statements and those statements are also deemed admitted for purposes of the present motions. *See* D. Conn. L. R. 56(a)1. Plaintiff denies several other factual statements, but Plaintiff does not cite to admissible evidence in support of his denials as required by the District's Local Rule. *See* D. Conn. L. R. 56(a)2. As a consequence, the Court could deem those facts admitted as well, though the Court finds it unnecessary to do so, since the facts that Plaintiff denies are not material to disposition of the pending motions.

returned to work as expected, Comcast was terminating his employment on grounds of job abandonment effective as of July 21, 2000. *Id.*

After receiving the termination letter, Mr. Williams went to the Union office and, while he was present, the Union Executive Vice Present called Comcast and questioned the termination. Williams Depo. at 66. Mr. Williams never had any direct contact with Comcast about his termination and did not file a written grievance regarding his termination. *Id.* at 100.

Over two years later, on November 5, 2002, Mr. Williams sued Comcast in state court. *See* Complaint [doc. # 1] ("Compl."). The Complaint claimed that Mr. Williams had been terminated in retaliation for his union activities, *id.* ¶ 39, and also that his termination violated several provisions of the Technical Agreement between the Union and Comcast, [doc. #21], Ex. E (the "Agreement"), and the short-term disability plan described in Comcast's Personnel Policies Manual (the "Manual"). Compl. ¶ 25. Specifically, Mr. Williams claimed that Comcast had violated the Agreement and the Manual by: (1) terminating him without just cause, (2) terminating him without giving two weeks advance notice, and (3) denying him short-term disability benefits as promised in the Agreement and the Manual. Compl. ¶¶ 21, 23, 29, 42. The Complaint asserted only state law claims: breach of express contract; breach of implied contract; retaliation for exercising rights in violation of Conn. Gen. Stat. § 46a-6(a); negligent misrepresentation; negligent infliction of emotional distress; intentional infliction of emotional distress; and breach of the covenant of good faith and fair dealing.

Comcast removed the case from state court to this Court on November 18, 2002, claiming that despite the state law labels Mr. Williams had attached to his causes of action, all of his

claims arose exclusively under federal labor laws. Notice of Removal [doc. # 1].[2] After discovery, Comcast moved for summary judgment on the ground that all of Mr. Williams' state law claims are preempted by federal law, and Mr. Williams moved to remand this case to state court on the ground that his claims are exclusively state law claims and that this Court therefore lacks subject matter jurisdiction over the claims.

## II.  Motion to Remand

Under 28 U.S.C. § 1441, a defendant ordinarily may remove from state court any civil action that originally could have been filed in federal court.[3] Where, as here, there is no diversity of citizenship, federal question jurisdiction must exist. *See* 28 U.S.C. § 1331. To determine whether an action arises under federal law and thus presents a federal question, courts have developed the "well pleaded complaint rule," which provides that federal question jurisdiction exists only where a federal question appears on the face of the plaintiff's properly pleaded complaint. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936). "The rule makes the plaintiff the master of his claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 390 (1987).

---

[2] Comcast also alleged in its removal petition that there was diversity of citizenship between the parties, but Comcast has since conceded that this Court does not have diversity jurisdiction over Mr. Williams' claim. Defendant's Memorandum in Opposition to Plaintiff's Motion to Remand [doc. # 39] at 2 n.1.

[3] Section 1441(a) provides as follows: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

4

A claim of federal preemption is a defense to the allegations of a complaint, and therefore, under the well pleaded complaint rule, a defendant's assertion that a plaintiff's claims are preempted by federal law ordinarily is not a proper basis to remove an action to federal court. *See, e.g., Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12 (1983). As is true of most rules, however, the well pleaded complaint rule has an exception. "On occasion, the [Supreme] Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). This exception is known as the "complete preemption corollary to the well pleaded complaint rule." *Caterpillar*, 482 U.S. at 393.

The Supreme Court has recognized several statutes as qualifying for the complete preemption corollary; § 301 of the LMRA is chief among them. *See El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999) ("We have found complete preemption to exist under the Labor Management Relations Act, 1947 and the Employee Retirement Income Security Act of 1974.") (citations omitted); *see also Caterpillar*, 482 U.S. at 393 ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA."); *Metro. Life Ins. Co.*, 481 U.S. at 65 (state contract and tort claims preempted completely by ERISA). Section 301 provides in pertinent part as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . .

29 U.S.C. § 185(a). Despite the seemingly permissive language of § 301, the Supreme Court has held that the "pre-emptive force of § 301 is so powerful as to displace entirely any state cause of

5

action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Avco Corp. v. Machinists*, 390 U.S. 557, 558 (1968).

Preemption under § 301 is not limited solely to suits alleging breach of a collective bargaining contract between a union and an employer. As the Supreme Court has explained,

> If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations . . . The interest in uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claim for tortious breach of contract.

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985); *see Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003). In making the preemption determination, it is the substance of plaintiff's claim, and not its characterization in the complaint, that controls.

Despite the preemptive force of § 301, not every dispute that touches upon a collective bargaining agreement is preempted by § 301. *See, e.g., Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988); *Vera*, 335 U.S. at 114-15. "[T]he pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by

6

relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." *Livadas*, 512 U.S. at 122-23 (internal quotations and citations omitted). Over the years, the Supreme Court has used a variety of verbal formulations to describe the claims that § 301 preempts – claims that are "founded directly on the rights created by collective-bargaining agreements," *Caterpillar*, 482 U.S. at 395; claims that "require[] the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 412; claims that are "substantially dependent on analysis of a collective-bargaining agreement," *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987); claims that are "inextricably intertwined with consideration of the terms of the labor contract," *Allis-Chalmers*, 471 U.S. at 213; and claims that assert rights "derive[d] from the contract," *id*. "[I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement" – and not whether a grievance arising from the same set of facts could be pursued under the agreement – "that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123-24 (internal citations omitted).

Although the Second Circuit has observed that "[t]he boundary between claims requiring 'interpretation' of a [collective bargaining agreement] and ones that merely require such an agreement to be 'consulted' is elusive," *Wynn v. AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001), this case presents few difficulties. Measured against the Supreme Court's standards, it is apparent that many of Mr. Williams' claims fall comfortably within the scope of § 301 preemption. There could be no clearer basis for § 301 preemption than Count One of the Complaint, in which Mr. Williams sues Comcast for breach of the express terms of the Agreement – specifically, the provisions requiring just cause for termination and two weeks advance notice for termination. Compl. ¶ 42 ("Said action by Defendant violated the [Collective

7

Bargaining] Agreement and the Manual."). At argument, counsel for Mr. Williams acknowledged that those claims are founded exclusively upon the rights and duties specified in the Agreement.

As framed, Mr. Williams' breach of express contract claim for alleged denial of short-term disability benefits also is fully dependent upon and derives exclusively from the Agreement. *See* Compl. ¶ 25. The Manual, which describes Comcast's short-term disability plan, is expressly incorporated by reference in the Agreement, which specifies all of the benefits Union employees receive, including short-term disability benefits. Agreement at Art. 29 ("All full-time regular employees governed by this collective bargaining agreement shall be covered under and bound by all the provisions of the Company's . . . short-term disability plan . . ."; "[t]he aforementioned benefit plans specified in this Article shall be the exclusive agreement between the Employer and the Union with respect to" among others, the short-term disability plan). Mr. Williams does not cite to or invoke any other agreement or contract in support of his short-term disability breach of contract claim.[4]

Therefore, to resolve each of Mr. Williams' claims of breach of the express terms of the Agreement, this Court will be required to construe, interpret, and apply the provisions of the Agreement. Yet those are precisely the kind of determinations that must be governed by a uniform federal labor law and not by state law, "lest common terms in bargaining agreements be

---

[4] This decision is limited to the claim that Mr. Williams has pleaded and presented. The decision should not be construed as holding that claims for breach of the terms of employee benefit plans are invariably preempted by § 301. A union employee may well be able to present a claim for breach of the terms of a benefit plan that is independent of the collective bargaining agreement. *See Foy v. Pratt & Whitney Group*, 127 F.3d 229, 234 (2d Cir. 1997). However, Mr. Williams has not done so.

8

given different and potentially inconsistent interpretations in different jurisdictions." *Livadas*, 512 U.S. at 122; *see Allis-Chalmers*, 471 U.S. at 211 ("[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law.").

In an effort to escape the consequences of § 301 preemption, Mr. Williams portrays his claims as flowing from an employment agreement that is "independent" of the Agreement. *See* Mem. in Supp. of Obj. To Mot. for Summ. J. [doc. # 31] at ¶ 11 ("Plaintiff's employment was governed by his individual employment contract."). In *Caterpillar*, the Supreme Court observed that "individual employment contracts are not inevitably superseded by any subsequent collective bargaining agreement covering an individual employee, and claims based upon them may arise under state law." 482 U.S. at 396; *Foy*, 127 F.3d at 234 (2d Cir. 1997) (no § 301 preemption where the subject of a lawsuit is a promise outside the "ambit" of the collective bargaining agreement).

While it is certainly true that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective bargaining agreement, *Caterpillar*, 472 U.S. at 396 (emphasis in original), that is not the situation presented by the Complaint in this case. Mr. Williams' Complaint is based wholly upon the Agreement and the Manual that is incorporated by reference in the Agreement. Compl. ¶ 42. Indeed, the Agreement expressly states that "[t]his instrument contains the full and complete Agreement between the Company and the Union on all bargainable issues . . . there are no other such agreements written or unwritten between the parties." Agreement at Art. 45. Neither in his Local Rule 9(c)(2)

9

Statement, his legal memoranda, nor at oral argument was Mr. Williams able to identify any agreement or promise independent of the Agreement that accorded him the rights or promises he claims Comcast breached in terminating him.

At a minimum, therefore, Mr. Williams' claim for breach of an express contract, Count One of the Complaint, is preempted by § 301 of the LMRA. That count alone provides an adequate basis for Comcast's assertion of federal question jurisdiction and its removal of this action to federal court.[5] *See Vera*, 335 F.3d at 116. Accordingly, this Court DENIES Plainitff's Motion to Remand [doc. # 32].[6]

---

[5] Even if other counts of Mr. Williams' Complaint were not preempted by the LMRA, and the Court concludes below that they are, the Court would nonetheless be justified in exercising supplemental jurisdiction over any non-preempted state law claims since all of Mr. Williams claims are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367; *see Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 (2d Cir. 2003).

[6] In support of its removal petition, Comcast also claimed that NLRA preemption under the Supreme Court's decision in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959) – so-called *Garmon* preemption – provided a proper basis for removal. However, some circuits have held that *Garmon* preemption does not confer original jurisdiction on federal courts and therefore does not provide a basis for removal. *See Hayden v. Reickerd*, 957 F.2d 1506, 1512 (9th Cir. 1992); *see also LaBuhn v. Bulkmatic Transport Co.*, 865 F.2d 119, 123 (7th Cir. 1988) (noting that a claim of preemption by *Garmon* does not provide a ground for removal). To date, neither the Supreme Court nor the Second Circuit has decided whether *Garmon* preemption provides a federal question basis for removal. *See, e.g., Foy*, 127 F.3d at 237 n. 4 ("express[ing] no view as to whether *Garmon* preemption is ever a proper basis for removal"). District courts in this circuit have declined to find that *Garmon* provides a basis for removal. *See, e.g., Suarez v. Gallo Wine Distrib. LLC*, No. 02 Civ. 4273, 2003 WL 716548, at *2 (S.D.N.Y. March 3, 2003); *Greco Bros. Readi-Mix Concrete Co., Inc. v. Local 282 Int'l Bhd. of Teamsters, AFL-CIO*, No. 01-CV-2217, 2002 WL 417167, at *2 (E.D.N.Y. March 7, 2002). Because § 301 provides a proper basis for federal question jurisdiction and removal in this case, there is no need for this Court to consider whether Comcast's claim of *Garmon* preemption would also support the removal of this case from state court.

### III. Summary Judgment

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The Second Circuit has held that "in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Because there is no genuine issue of material fact on Comcast's preemption claims, this case is suitable for summary judgment; the only question for the Court to decide is whether the state law claims asserted by Mr. Williams are preempted by either the LMRA or the NLRA. As stated previously, Mr. Williams asserts two basic claims in this action: first, that he was terminated in retaliation for his union activities; and second, that Comcast violated the terms of the Agreement in three respects – in terminating him without just cause; in failing to give him two weeks advance notice of termination; and in denying him the short-term disability benefits promised in the agreement. The Court first addresses the latter claims, all of which the Court concludes are preempted by the LMRA. The Court next addresses Mr. Williams' retaliation claims, which the Court concludes are preempted by the NLRA.

11

### A. LMRA

What the Court has previously said regarding LMRA preemption of Mr. Williams' breach of express contract claim also disposes of Mr. Williams' other state law causes of action based on the Agreement. Not only is Mr. Williams' claim for breach of express contract, Count One of the Complaint, based exclusively on claimed breaches of the Agreement, the same is also true for Count Two – which claims breach of an implied agreement – and Count Seven – which alleges breach of the implied covenant of good faith and fair dealing. Count Two thus merely incorporates by reference the allegations of the breach of express contract claim and Count Seven explicitly states that Comcast violated the covenant of good faith and fair dealing by "breach[ing] the written provisions of the [Collective Bargaining] Agreement" and by "breach[ing] the written provisions of the Manual." Compl. ¶ 43. No other covenants, promises, or agreements, express or implied, are identified in the Complaint. It was also clear from questioning of Mr. Williams' counsel at oral argument that all three counts – breach of express contract, breach of implied contract, and breach of the good faith covenant – were all directly founded on the rights created by the Agreement and are inextricably intertwined with consideration of the terms of that agreement. *See, e.g., Allis-Chalmers,* 471 U.S. at 217 ("Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims."); *Carvalho v. Int'l Bridge & Iron Co.,* No. 3:99CV605, 2000 WL 306456, at *7-*8 (D. Conn. Feb. 25, 2000) (dismissing state law good faith and fair dealing claim as preempted

under § 301).[7] Therefore, for the reasons discussed above regarding Mr. Williams' claim of breach of express contract (Count One), the Court concludes that the counts for breach of implied contract (Count Two) and breach of the good faith covenant (Count Seven) are also preempted by the LMRA.

Mr. Williams has also sued Comcast in tort – for intentional infliction of emotional distress (Count Four), for negligent infliction of emotional distress (Count Five) and for negligent misrepresentation (Count Six). However, as pleaded and presented on summary judgment, these claims also are based entirely upon claimed breaches of the Agreement.[8] As previously noted, the label or characterization that Mr. Williams chose to give his claims is not determinative of preemption; rather, it is the substance of the claims that controls. *Foy*, 127 F.3d at 233. While Mr. Williams asserts that Comcast owed him a duty not to cause him emotional distress, it is apparent that the source of that duty is entirely dependent upon the contractual obligations that form the basis for Mr. Williams' breach of contract claims. That is, if Comcast

---

[7] *See, e.g., Brown v. AXA RE*, No. 02 Civ. 10138, 2004 WL 941959, at *4 (S.D.N.Y. May 3, 2004) ("A cause of action for a breach of an implied covenant of good faith and fair dealing "is dependent upon the existence of an enforceable contract.") (citation omitted); *Martin v. Dupont Flooring Sys., Inc.* No. 301CV2189, 2004 WL 726903, at *6 (D. Conn. March 31, 2004). ("In order to make out a claim of breach of an implied covenant of good faith and fair dealing, a plaintiff must prove the existence of a contract between plaintiff and defendant.); *Citizens Communications Co. v. Trustmark Ins.*, 303 F. Supp. 2d 197, 207 (D. Conn. 2004) ("[A] breach of covenant of good faith and fair dealing must stem from the existence of a contract."); *Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 793 (2000) ("[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.").

[8] The Complaint is not entirely clear on whether these tort claims are also founded upon Mr. Williams' claim of retaliation for union activism. However, to the extent that the tort claims are also based upon such retaliation, they would be preempted by the NLRA for the reasons discussed below.

13

complied with the terms of the Agreement and Manual when the company terminated Mr. Williams, he would have no tort claim. In those circumstances, to permit Mr. Williams to proceed with his emotional distress tort claims would "allow [him] to evade the requirements of § 301 by relabeling [his] contract claims as claims for tortious breach of contract." *Allis-Chalmers*, 471 U.S. at 211; *see Kellman v. Yale-New Haven Hosp.*, 64 F. Supp. 2d 35, 36-7 (D. Conn. 1999) (dismissing claims of negligent and intentional infliction of emotional distress); *Knight v. S. New England Tel. Corp.*, No. 3:97CV1159, 1998 WL 696014, at *4 (D. Conn. Sept. 18, 1998) (dismissing claims for emotional distress, among others).[9]

At argument, Mr. Williams' counsel asserted that his claim for negligent misrepresentation was independent from the Agreement and was based instead on alleged misrepresentations by the administrator of the short-term disability plan and by Comcast employees in July 2000 regarding the duration of his disability leave, misrepresentations on which he relied to his detriment. If that truly were the basis of Mr. Williams' negligent misrepresentation claim, that claim likely would not be preempted by the LMRA. *See, e.g., Foy*, 127 F.3d at 235 (finding negligent misrepresentation claim not preempted when it was not substantially dependent upon an analysis of the terms of the collective bargaining agreement).

However, the negligent misrepresentation claim asserted at argument is not, in fact, the claim alleged in Mr. Williams' Complaint. In his Complaint, which he has never sought to

---

[9] In view of the undisputed fact that Mr. Williams had no contact with Comcast regarding his termination other than the letter of termination that Comcast sent on July 21, it is doubtful in any event that Mr. Williams has a negligent or intentional emotional distress claim under Connecticut law. *See, e.g., Belanger v. Commerce Clearing House*, 25 F. Supp. 2d 83, 84-85 (D. Conn. 1998); *Morrissey v. Yale Univ.*, 268 Conn. 426, 428 (2004); *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 442 (2003); *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000).

14

amend, Mr. Williams bases his negligent misrepresentation claim solely and squarely on the terms and conditions of the Agreement and the Manual, and not on the alleged representations made to him in July 2000. *See* Compl. ¶ 43 ("The Defendant knew or should have had the means of knowing that its statements concerning the terms and conditions contained in the Agreement and Manual were false, therefore, Defendant negligently misrepresented the terms and conditions under which he would be employed. The Plaintiff relied [on the] aforesaid representations by agreeing to work for Defendant, performing his duties for ten years, not seeking employment elsewhere."). While Mr. Williams may well have been able to plead and pursue a non-preempted negligent misrepresentation claim, the fact is that to date he has not done so and the negligent misrepresentation claim that he has chosen to plead and pursue is clearly preempted by the LMRA.

Finally, the Court notes that preempting the Mr. Williams' state law claims is necessary to assure that the purposes animating § 301 will not be frustrated. *See Livadas*, 512 U.S. at 122-23. The Union-Comcast Agreement contains detailed grievance and arbitration provisions and it is apparent that each of Mr. Williams' breach of contract and related claims could have proceeded through, and are well-suited for disposition by, that contract-specified process. *See* Agreement, Articles 5 and 6. In those circumstances, "permitting an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers*, 471 U.S. at 220-21; *Vera*, 335 F.3d at 118-19.

Since all of Mr. Williams state law claims, tort and contract, based upon Comcast's

alleged violations of the unjust cause, advance notice, and short-term disability terms of the Agreement and the Manual are preempted by § 301 of the LMRA, the Court grants Comcast's motion for summary judgment on those claims. Moreover, since Mr. Williams has not to date asserted a claim under the LMRA but has only asserted state law claims, there is no need for this Court to consider whether Mr. Williams has not exhausted his remedies under the Agreement. *Id.* at 118-19 (after finding state law claims preempted, court granted summary judgment on plaintiff's LMRA claim for failure to exhaust remedies).

### B.  NLRA

In Count Three of the Complaint, Mr. Williams sues Comcast under state law for retaliating against him because of his union activism. Compl. ¶ 43.[10] Mr. Williams has based this state law claim on Conn. Gen. Stat. § 46a-60(a), which prohibits discriminatory employment practices. However, any state law claim that Mr. Williams may have for Comcast's alleged retaliation against him for engaging in union activity is preempted by the NLRA.

In *Garmon*, the Supreme Court held that states may not regulate conduct that is protected, or even arguably protected, by § 7 or § 8 of the NLRA. *Garmon*, 359 U.S. at 245. The Supreme Court explained that the "unifying consideration" in its preemption decisions has been due

---

[10] At oral argument, counsel for Mr. Williams stated that his client has also been discriminated against on the basis of his race. However, there is no claim of racial discrimination in the Complaint, Mr. Williams made no claim of racial discrimination in any of his pleadings opposing summary judgment or at his deposition and counsel for Mr. Williams conceded that at no time did Mr. Williams file a complaint of racial discrimination with the EEOC or CHRO. Accordingly, this Court has not considered any claim that Mr. Williams was the victim of racial discrimination and limits its decision to Mr. Williams' claim of retaliation for union activism.

"regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." *Id.* In the Supreme Court's view, "[a] multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudication as are different rules of substantive law." *Id.* at 243. Therefore, "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245; *see Foy*, 127 F.3d at 236. *Garmon* preemption thus "protects the [National Labor Relations] Board's primary jurisdiction to decide what conduct is protected or prohibited in labor-management relations under the NLRA. *Building Trades Employers' Educ. Assoc. v. McGowan*, 311 F.3d 501, 508 (2d Cir. 2002).

Sections 7 and 8 of the NLRA regulate "concerted activities" and "unfair labor practices," respectively. They "seek[] to protect the former and stamp out the latter." *Id.* As is relevant here, § 7 guarantees employees the right to "assist labor organizations" and "to engage in other concerted activities." 29 U.S.C. § 157. Section 8 makes the following conduct, among others, an unfair labor practice: "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in § 7; "by discrimination in regard to hire or tenure of employment or any term or condition of employment to . . . discourage membership in any labor organization; and "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subsection." *Id.* §§ 158(a)(1), (3), (4).

Mr. Williams' claim that his employment was terminated in retaliation for his union activism and his union activities falls within the provisions of §7 and § 8 of the NLRA. Those

sections prohibit precisely the conduct that Mr. Williams alleges in this case. Judge Janet C. Hall's holding in a somewhat similar case has equal application here; as she put it, "[n]othing could seem to fall more squarely under the umbrella of Section 8(a) than the question of whether the plaintiff was in fact being retaliated against by [his] supervisors because of [his] union . . . activity." *Smith*, No. 3:97CV1608, 2000 WL 306950, at * 7 (D. Conn. Jan. 26, 2000).. As such, Mr. Williams' claim falls within the exclusive province of the National Labor Relations Board ("NLRB"). *Garmon*, 359 U.S. at 245 ("When an activity is arguably subject to §7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the [NLRB].).."

Because Mr. Williams' state law claim for retaliation (Count Three) is preempted by the NLRA, the Court must grant Comcast summary judgment on that state law claim. And because Mr. Williams has not yet tendered his claim of retaliation to the Board and the Board has therefore not yet considered, let alone adjudicated, the claim, this Court does not have occasion to consider the validity of any claim Mr. Williams might make under the NLRA.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand [doc. # 32] is DENIED and Defendant's Motion for Summary Judgment [doc. # 21] is GRANTED in its entirety. The Clerk is directed to enter judgment in favor of Comcast and against Plaintiff on all counts of the Complaint and to close the case.

IT IS SO ORDERED.

_____
Mark R. Kravitz, U.S.D.J.

Dated at New Haven, Connecticut: June 1, 2004.